**ORDERED in the Southern District of Florida on September 1, 2026.**

Scott M. Grossman, Chief Judge
United States Bankruptcy Court

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:

American Health Associates Holdings, Inc., *et al.*,[1] Case No. 26-14825-SMG

Debtors. Chapter 11

_______________________________________/

**ORDER APPROVING SALE OF DEBTORS' IMAGING BUSINESS**
**FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS**

**THIS MATTER** came before the Court for hearing on August 31, 2026, upon the *Expedited Motion for Order Approving the Private Sale of the Debtors' Imaging Business Free and Clear of Liens, Claims, Encumbrances, and Interests* (the "Motion")[2] [Dkt. No. 353] filed by the Debtors, as well as the *Objection of The Official Committee of Unsecured Creditors to*

[1] The Debtors in these jointly administered cases are: (1) American Health Associates Holdings, Inc.; (2) American Health Associates Parent, LLC; (3) American Health Holdings, LLC; (4) American Health Holdings II, LLC; (5) American Health Holdings III, LLC; (6) American Health Holdings IV, LLC; (7) American Health MW, LLC; (8) American Health Imaging MW, LLC; (9) American Health S, LLC; (10) American Health Imaging S, LLC; (11) American Health W, LLC; (12) American Health NE, LLC; and (13) Mobile Xray Diagnostic, LLC.
[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion or the PSA, as applicable.

*Debtors': (A) Expedited Motion for Order Approving the Private Sale of the Debtors' Imaging Business Free and Clear of Liens, Claims, Encumbrances, and Interests; (B) Expedited Joint Motion to Voluntarily Dismiss Cases of Imaging Debtors, Approve Settlements, and Approve Distributions to City National Bank and National Biz Capital; (C) (c) Expedited Motion to Approve Settlement Agreement with Joel Kirchick and Pat Tortorella and Related Entities; and (D) Expedited Motion to Pay Prepetition Claim of Rhode Island Division of Taxation* [Dkt. No. 375](the "Committee Objection") filed by the The Official Committee of Unsecured Creditors (the "Committee); *Siemens Financial Services, Inc.'s Limited Objection to the Debtors' Expedited Motion for Order Approving the Private Sale of the Debtors' Imaging Business Free and Clear of Liens, Claims, Encumbrances and Interests [Dkt. No. 353] and Reservation of Rights* [Dkt. No. 367]; and *City National Bank of Florida's Limited Objection and Reservation of Rights to: (I) Expedited Motion Approving Private Sale of Debtors' Imaging Business; and (II) Expedited Joint Motino to Voluntarily Dismiss Cases of Imaging Debtors, Approve Settlements, and Approve Distributions to City National Bank and National Biz Capital* [Dkt. No. 378].

For the reasons stated on the record, and being otherwise fully advised in the premises, it is FOUND AND DETERMINED:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.[3]

B. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of this

[3] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.

case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought in the Motion is 11 U.S.C. §§ 363.

C. Due and adequate notice of the Motion and of the relief requested therein has been given in accordance with the provisions of 11 U.S.C. §§ 102(1) and 363, and Bankruptcy Rules 2002 and 6004. No other or further notice of the Motion is or shall be required.

D. The Membership Interest Purchase Agreement (the "MIPA") between American Health Imaging MW, LLC, American Health Imaging S, LLC, Mobile Xray Diagnostics, LLC, American Health W, LLC, American Health Holdings, LLC, American Health Holdings II, LLC, American Health Holdings III, LLC, and American Health Holdings IV, LLC (the "Seller Debtors") and All-Stat Portable, LLC ( "Buyer"), a copy of which is attached to the Motion as Exhibit 1, is valid and enforceable and was the result of arm's-length, good faith negotiation between the Seller Debtors and Buyer. The MIPA and the documents contemplated thereby, the "Sale Documents."

E. The sale and transactions contemplated by the Sale Documents are undertaken by Buyer in good faith, as that term is used in 11 U.S.C. § 363(m), and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale and transactions shall not affect the validity of the sale of the Membership Interests to Buyer, unless such authorization is duly stayed pending such appeal. Buyer is a purchaser in good faith of the Membership Interests and is entitled to all of the protections afforded by 11 U.S.C. § 363(m).

F. Buyer entered into the proposed sale without collusion, in good faith, and from an arm's length bargaining position, and has not violated 11 U.S.C. § 363(n) by any action or inaction, and the MIPA does not violate the provisions of 11 U.S.C. § 363(n). The Seller Debtors and Buyer have not engaged in any conduct that would cause or permit the MIPA to be avoided under 11

U.S.C. § 363(n).

G. The Seller Debtors have, to the extent necessary or applicable, (a) the full corporate power and authority to execute and deliver the Sale Documents and all other documents contemplated thereby; (b) all corporate authority necessary to consummate the transaction contemplated by the Sale Documents; and (c) taken all corporate action necessary to authorize and approve the Sale Documents and the consummation of the transactions contemplated thereby. The sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Sale Documents, are required for the Seller Debtors to consummate the sale, the Sale Documents, or the transactions contemplated thereby.

H. The Buyer is neither a successor nor a continuation of the Debtors.

I. The Buyer is unrelated to the Debtors, including the Debtors' past and present principals and owners.

J. There is a sound business justification for the sale and transactions described in the Sale Documents.

K. The disclosures made by the Debtors concerning the Motion, the Sale Documents, and the Sale were good, complete, and adequate.

L. The Purchase Price is fair and reasonable.

M. No holder of any liens, claims, interests, or encumbrances on the Membership Interests objected to the Motion, and therefore, all holders of liens, claims, interests, or encumbrances on the Membership Interests consented to the sale of the Membership Interests free and clear of all interests, liens, claims, and encumbrances under 11 U.S.C. § 363(f)(2).

N. The aggregate value of the Membership Interests is no greater than the Purchase Price, and therefore, pursuant to 11 U.S.C. § 506(a)(1), the aggregate value of all interests, liens, claims, and encumbrances on the Membership Interests is less than the Purchase Price.

Accordingly, for the foregoing reasons, and being otherwise fully advised in the premises, it is **ORDERED** and **ADJUDGED** that:

1. The Motion [ECF No. 353] is **GRANTED**.

2. The Seller Debtors are authorized to enter into the MIPA.

3. The Sale Documents are valid and enforceable and are approved—together with the transactions contemplated therein—in their entirety, and the Seller Debtors and Buyer are authorized to close on the PSA and undertake all necessary actions and transactions to do so (the closing of the MIPA being the "Closing"). For the avoidance of doubt, all persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Seller Debtors to transfer the Membership Interests to the Buyer in accordance with the Sale Documents.

4. The Sale Documents and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court.

5. As a condition of Committee's consent to the Motion and the withdrawal of the Committee Objection, the Debtors agree that upon payment of each of the $200,000 incremental payments under the MIPA (the "<u>Incremental Payments</u>"), the Incremental Payments shall be deemed property of the estate and shall be earmarked specifically for distributions to creditors and not for operations, with the exception of the $200,000 that is due to be paid to National Biz Capital ("NBC") pursuant to its settlement with the Debtors and the Committee. If the non-Seller Debtors

need the Incremental Payments for operations prior to confirmation of their chapter 11 plan, they may do so with the consent of the Committee and must also provide an appropriate form of substitution of the money used back to the non-Seller Debtors' estates for distribution to creditors. The Committee's withdrawal of the Committee Objection and consent to the Motion pursuant to the above terms was negotiated solely to facilitate the sale, and is without prejudice to the Committee's rights, claims, and objections to the Debtors' Disclosure Statement and Plan.

6. At Closing, the Debtors shall pay $1,000,000.00 to City National Bank of Florida ("CNB") from the proceeds of the Sale of the membership interests of the Imaging Debtors, in immediately available funds, directly to an account designated by CNB in writing prior to Closing (the "CNB Payment"). The CNB Payment shall be made before or simultaneously with the transfer of the membership interests to the Buyer and prior to any other disbursement of any portion of the Sale proceeds.

7. Except as set forth in the MIPA, the sale of the Membership Interests, as defined in the MIPA, is approved on an as-is where-is basis, free and clear of any and all interests, claims, liens, and encumbrances thereon pursuant to 11 U.S.C. §§ 105(a), 363(b), 363(f), 365(b), and 365(f), including without limitation, mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, and other liens (including mechanics', materialman's, and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, alter-ego, environmental, or tax, decrees of any court or foreign or domestic governmental entity, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or

unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise.

8. All claims, liens, interests, and encumbrances on the Membership Interests sold pursuant to the MIPA shall attach to the proceeds of the sale with the same priority, validity, and effect as they now have in and on such assets, subject to the rights, claims, defenses, and objections of the Debtors, their estates, and all interested parties.

9. The sale of the Membership Interests shall be free and clear of any claims of derivative, vicarious, or successor liability of any kind, nature, or character whatsoever, by reason of any theory of law or equity. Buyer, as the result of any action taken in connection with the purchase of the Membership Interests, shall not be deemed to (a) be the successor of the Debtors; (b) have, *de facto* or otherwise, merged with or into the Debtors; (c) be a mere continuation or a substantial continuation of the Debtors or for payment of any benefit(s) accruing to the Debtors; (d) be a successor in interest to the Debtors under any theory of successor liability for employee-related claims against the Debtors and/or its principals brought under the Fair Labor Standards Act; or (e) be a successor of or to the Debtors for any other type of claims, interests or causes of action against the Debtors or the Membership Interests of any kind whatsoever.

10. Buyer shall have no obligation to pay any liabilities or obligations of the Debtors of any kind except as expressly provided in the MIPA.

11. If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing interests in the Membership Interests shall not have delivered to the Debtors prior to the Closing, in proper form for filing and

executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all interests which the person or entity has with respect to the Membership Interests, then (a) the Debtors are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Membership Interests, and (b) Buyer is authorized to file, register, or otherwise record a certified copy of this Order which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all interests in the Membership Interests of any kind or nature whatsoever.

12. This Order shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of federal, state, county, and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that Buyer is the assignee and owner of the Membership Interests free and clear of all interests or claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized and specifically directed to strike recorded encumbrances, claims, liens, and other interests against the Membership Interests recorded prior to the date of this Order. Further, all Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the MIPA and related agreements.

13. Subject to the Debtor's satisfaction of its obligations under this Order and solely to the extent set forth herein, any interest holders that did not object, or that withdrew their objections, to the Motion or the MIPA, are deemed to have consented to the sale of the Membership Interests

free and clear of their respective interests on the Property pursuant to section 363(f)(2) of the Bankruptcy Code.

14. Prior to the Closing of the sale of the Membership Interests, each of the Debtors' creditors is authorized to execute such documents and take all other actions as may be necessary to release effective as of the Closing its interests in the Membership Interests, if any, as such interests may have been recorded or may otherwise exist.

15. The Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the MIPA, all amendments and modifications thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: a) subject to the terms and conditions of the MIPA and this Order, compel delivery of the Membership Interests to Buyer; b) compel delivery of the Purchase Price by Buyer or performance of other obligations of Buyer contained in the MIPA; c) resolve any disputes arising under or related to the MIPA, except as otherwise provided therein; and d) interpret, implement, and enforce the provisions of this Order.

16. Within two business days of Closing, the Debtors shall file a notice of the occurrence of Closing.

17. Except as set forth in the MIPA or to enforce the terms of this Order, all persons and entities, including Debtors, employees, former employees, all debt holders, equity holders, administrative agencies, governmental units, tax and regulatory authorities, secretaries of state, federal, state, and local officials, lenders, contract parties, bidders, lessors, and other parties in possession of any of the Membership Interests at any time, trade creditors, and all other creditors holding or asserting liens, claims, or interests of any kind or nature whatsoever against or in the Membership Interests (whether known or unknown as of the Closing Date, now existing or

hereafter arising, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise), shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim, or other proceeding of any kind, directly or indirectly, against Buyer or any of its affiliates, predecessors, successors, or assigns or any of their respective current and former members, managers, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors, and representatives (each of the foregoing in its individual capacity), their property, or the Membership Interests in respect of liens, claims, or encumbrances that arise under or out of, in connection with the Membership Interests or the transfer of the Membership Interests to Buyer. Notwithstanding the foregoing or anything in this Order or the MIPA to the contrary, nothing in this paragraph shall bar, enjoin, or otherwise impair City National Bank of Florida ("CNB") from exercising or enforcing any and all of its rights, remedies, claims, liens, security interests, guarantees, or causes of action against (i) any Debtor other than the Imaging Debtors, (ii) any non-Debtor obligor, guarantor, or credit-support provider under the CNB Loan Documents (as defined in Dkt. No. 237) or the agreed Final Judgment by Judge entered on May 17, 2026 (the "CNB Final Judgment"), in the Circuit Court in and for Miami-Dade County, Florida, in the pending action styled *City National Bank of Florida v. American Health S, LLC, et al.*, Case No. 2025-012586-CA-01, (iii) Bridgeford Trust Company, LLC, as Trustee of the Martin 2020 Family Irrevocable Trust u/t/a/d December 24, 2020, Debbie Martin, Christopher Martin, or (iv) any collateral, deposit account, or other asset other than the Membership Interests, all of which are expressly preserved.

18. Notwithstanding anything contained in this Order, nothing in this Order nor the sale

and transactions contemplated by the Sale Documents (the "Sale Transaction") shall affect American Health Imaging S, LLC's, American Health W, LLC's, and American Health S, LLC's respective obligations to Siemens Financial Services, Inc. under the Siemens Financial Services Contracts (as that term is defined in Siemens Financial Services, Inc's Limited Objection to the Motion), and American Health Imaging S, LLC, American Health W, LLC, and American Health S, LLC shall remain liable to Siemens Financial Services, Inc. for such obligations (including, without limitation, in the event American Health Imaging S, LLC's and/or American Health W, LLC's bankruptcy cases are dismissed or the Sale Transaction Completes).

19. Notwithstanding any provision in this Order, or any plan or other order (collectively, the "Documents"), nothing in the Documents shall: (1) authorize the assumption, sale, assignment or other transfer of any federal (i) grants, (ii) grant funds, (iii) contracts between the Debtor and the United States or its agencies, including but not limited to agreements, contracts, awards, licenses, certificates, authorizations, and applications, (iv) property, including but not limited to, any intellectual property and patents belonging to the United States or any of its agencies or components thereof, (v) leases, or (vi) other interests belonging to the United States or its agencies (collectively, "Federal Interests") without compliance by the Debtor and any buyer with all terms of the Federal Interests and with all applicable legal requirements, obligations, and approvals under non-bankruptcy law; (2) be interpreted to set cure amounts or to require the United States to novate, approve or otherwise consent to the sale, assumption, assignment or other transfer of any Federal Interests; (3) waive, alter or otherwise limit the United States' property rights, including but not limited to, inventory, patents, intellectual property, licenses, and data; (4) affect the setoff or recoupment rights of any governmental unit (as defined in 11 U.S.C. § 101(27)) and such rights are preserved; (5) authorize the sale, assumption, assignment or other transfer of any

governmental unit's (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable requirements, obligations and approvals under non-bankruptcy laws; (6) release, nullify, preclude or enjoin the enforcement of any police or regulatory power; (7) confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (8) divest any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order; or (9) exclude, extinguish, exculpate or release any obligation or liability associated with a Medicare provider agreement, as required pursuant to the Medicare Act and Medicare regulations, including without limitation, any overpayments, civil penalties, or other enforcement remedies, liabilities arising from the Debtor's compliance history, and all other obligations and liabilities associated with such provider agreement, and any transfer of a Medicare provider agreement shall be subject to all such liabilities and obligations associated with the provider agreement.

20. Notwithstanding anything herein to the contrary, to the extent that any Sale Documents or the MIPA are inconsistent with this Order, the terms of this Order shall control.

21. All claims by any of the Imaging Debtors against any of the other Debtors and by any of the other Debtors against any of the Imaging Debtors are deemed released.

22. Notwithstanding Bankruptcy Rule 6004, this Order shall be effective and enforceable immediately upon entry, and the 14-day stay provided for under the Bankruptcy Rules is waived.

###

Submitted by:

Bradley S. Shraiberg
Shraiberg Page P.A.
Attorneys for the Trustee
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
bss@slp.law

Bradley S. Shraiberg is directed to immediately serve a conformed copy of this Order and to file a Certificate of Service evidencing same.